## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Billy Ray Watson, | ) | C/A No. 0:15-4935-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Billy Ray Watson, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



## ADMINISTRATIVE PROCEEDINGS

In June 2012, Watson applied for DIB and SSI, alleging disability beginning December 10, 2011. Watson's applications were denied initially and upon reconsideration, and he requested a hearing before an ALJ. A hearing was held on March 7, 2014 at which Watson, who was represented by Stephen S. Wilson, Esquire, appeared and testified. During the hearing, the ALJ also heard testimony from a vocational expert. Subsequent to the hearing, Watson submitted additional evidence to the ALJ and amended his alleged onset date to April 1, 2012. The ALJ issued a decision on May 30, 2014 concluding that Watson was not disabled from April 1, 2012 through the date of the decision. (Tr. 11-22.)

Watson was born in 1970 and was forty-one years old at the time of his amended alleged disability onset date. (Tr. 20.) He has passed a General Educational Development ("GED") test and has past relevant work experience as a cashier, an electrician, and a machine fixer at a mill. (Tr. 216.) Watson alleged disability due to back surgery, nerve damage in his right hip, degenerative discs, ankle pain, shoulder pain, hand pain, and high cholesterol. (Tr. 215.)

In applying the five-step sequential process, the ALJ found that Watson had not engaged in substantial gainful activity since April 1, 2012—his amended alleged onset date. The ALJ also determined that Watson's degenerative disc disease of the lumbar spine, status post laminectomy and microdiscectomy, with residual neuropathy was a severe impairment. However, the ALJ found that Watson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ found that Watson retained the residual functional capacity to

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is limited to occasional use of foot controls on the right and unlimited on



the left within the exertional limit.  Additionally, the claimant requires the ability to stand or sit, or adjust positions at will consistent within the exertional limits. Moreover, the claimant requires a hand-held assistive device (such as a cane) over narrow, slippery, or erratically moving surfaces and for standing and walking in excess of twenty minutes.  In addition, the claimant is limited to frequently climbing ramps or stairs, balancing, stooping, and kneeling, occasionally, crouching and crawling, and never climbing ladders, ropes, or scaffolds.  Furthermore, the claimant is limited to less-than-occasional, if any, hazards associated with dangerous machinery or unprotected heights, but is otherwise capable of being aware of normal hazards aud taking appropriate precautions.  Additionally, the claimant is limited to simple, routine, repetitive tasks, which must be performed in a low stress, predictable work environment with clearly defined performance expectations and less than occasional public contact.  In addition, the claimant will be off task at will up to five percent of the workday beyond normal breaks, an example of which would equate to no more than six minutes within a two-hour segment, while remaining at the workstation.  Finally, the claimant may miss up to, but no more than two workdays per month.

(Tr. 16.)  The ALJ found that Watson was unable to perform past relevant work but that, considering Watson's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Watson could perform.  Therefore, the ALJ found that Watson was not disabled from April 1, 2013 through the date of his decision.

The Appeals Council denied Watson's request for review on October 16, 2016, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-3.)  This action followed.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers

PJG

v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Watson raises the following issues for this judicial review:

Issue 1      Opinion evidence. The opinions of Watson's treating specialist, Dr. Mitchell, contain work-preclusive limitations which the ALJ improperly rejected. Where the ALJ improperly rejects the opinion evidence, can his decision be supported by substantial evidence?

Issue 2      Improper reliance on vocational expert testimony. The ALJ is specifically required to elicit an explanation when a potential conflict exists in the VE's testimony. Can a decision based on improper reliance of VE testimony be found to be based upon substantial evidence?

(Pl.'s Br., ECF No. 12.)

**DISCUSSION**

## A.    Treating Physician

Watson first argues that the ALJ erred in evaluating opinion evidence from Dr. Michael David Mitchell, Watson's treating orthopedic surgeon. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given



controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that a finding that

a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id.

In March 2012, Dr. Mitchell noted in a treatment note that Watson would be given a work excuse as he did not think it was safe for Watson to return to work. (Tr. 284.) On February 19, 2013, Dr. Mitchell wrote a statement containing his opinions on Watson's abilities and completed a "Lumbar Spine Residual Functional Capacity Questionnaire." (Tr. 313, 314-17.) The ALJ mentioned the work excuse and summarized the February 2013 statement and questionnaire as follows:

> Dr. Mitchell noted the claimant was unable to engage in employment, was permanently and totally disabled, and should avoid any lifting or sitting, standing, or walking for more than fifteen minutes without changing positions (Exhibit 7F/3). Furthermore, Dr. Mitchell noted the claimant's pain and symptoms would frequently interfere in concentration. In addition, he noted the claimant would need to shift position at will and have unscheduled breaks. Moreover, the doctor noted the claimant could occasionally lift up to ten pounds, rarely twist, stoop, crouch, squat, and climb stairs and never climb ladders. Additionally, Dr. Mitchell noted the claimant would miss more than four days per month (Exhibit 7F/4, 5, 6, 7).

(Tr. 19.) In evaluating these opinions, the ALJ stated,

> [t]his opinion is given partial weight, as far as it is consistent with the above residual functional capacity. While the undersigned notes that an opinion on whether an individual is disabled goes to an issue reserved to the Commissioner and therefore cannot be given special significance, such opinion should still be considered in the assessment of the claimant's residual functional capacity (20 CFR 404.1527(e) and 416.927(e); SSR 96-5p). Additionally, the medical evidence does not support the extreme limitations noted in the opinion. Furthermore, although in his physician's statement, Dr. Mitchell noted the claimant had abnormal gait, tenderness, muscle atrophy and muscle weakness, his own treating notes are inconsistent with this and only note an antalgic gait (Exhibits 3F/2, 7F/5). Moreover, Dr. Mitchell noted the claimant did not require the assistance of a cane (Exhibit 7F/6). In addition, examination showed normal examination of the claimant's extremities (Exhibit 4F/15).

(Tr. 19-20.)

Upon careful review of the record, the parties' briefs, and the ALJ's above evaluation of Dr. Mitchell's opinions, the court finds that the ALJ's decision is sufficient to enable the court to



conduct a meaningful judicial review, and Watson has failed to demonstrate that the ALJ's evaluation of Dr. Mitchell's opinion is unsupported by substantial evidence.

As an initial matter, as argued by Watson, the ALJ's statement that the "opinion is given partial weight, as far as it is consistent with the above residual functional capacity" appears to get "things backwards." Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015). This statement implies that Dr. Mitchell's opinions were compared to the residual functional capacity as determined by the ALJ, rather than considering Dr. Mitchell's opinions as part of the ALJ's residual functional capacity analysis. In Mascio, the United States Court of Appeals for the Fourth Circuit stated that "a claimant's pain and residual functional capacity are not separate assessments to be compared with each other." Id. However, the Fourth Circuit found that such error would be harmless if the ALJ properly analyzed the credibility elsewhere.

The logic in Mascio would arguably apply equally to a treating physician's opinions and a claimant's residual functional capacity. In this case the ALJ appears to have improperly determined Watson's residual functional capacity first and then used it to determine the weight given to Dr. Mitchell's opinions. However, based on the ALJ's additional analysis of Dr. Mitchell's opinions and considering the decision as a whole, the court finds that any error is harmless.

As observed by the ALJ, to the extent Dr. Mitchell opined that Watson was disabled or unable to work, such an opinion is reserved to the Commissioner and not entitled to special significance. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (explaining that the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner, and opinions by medical sources on that point are not entitled to special significance). However, the ALJ also stated that he still considered the opinion and proceeded to apply the requisite factors. Although the ALJ generally

stated that "the medical evidence does not support the extreme limitations noted in the opinion," the ALJ continued by supporting this statement. Specifically, the ALJ observed a treatment note indicating a normal examination of Watson's extremities. (See Tr. 299.) Although Dr. Mitchell indicated his opinions were supported by findings of abnormal gait, tenderness, muscle atrophy, and muscle weakness, the ALJ observed that Dr. Mitchell's treatment notes were inconsistent with these findings and only indicated a finding of antalgic gait on one occasion. (See Tr. 275; cf. Tr. 279, 284.) Finally, the ALJ specifically observed that Dr. Mitchell's own opinion indicated that Watson did not require the use of an assistive device. (See Tr. 316.) Although Watson attempts to cite evidence that could arguably support the opinions offered by Dr. Mitchell, the ALJ clearly considered this evidence in evaluating Watson's application for disability benefits. For example, in weighing Dr. Charles Glace's opinion in the immediately preceding paragraph, the ALJ observed that Dr. Glace noted "decreased range of motion in side-to-side twist and flex and positive tenderness down the right leg;" however, the ALJ also observed that "examination of the extremities was normal." (Tr. 19) (citing Tr. 299). Further, in evaluating the opinion from Dr. David Rolling, the ALJ noted the consistency between Dr. Rolling's opinions and Dr. Mitchell's opinions. (Tr. 20.)

Thus, upon review of the ALJ's decision and the record, the court concludes that the ALJ's decision reflects that he applied the relevant factors in evaluating Dr. Mitchell's opinions and finds that Watson has failed to demonstrate that the ALJ's decision to afford partial weight to Dr. Mitchell's opinions is unsupported by substantial evidence or based on an incorrect application of the law such that remand is required. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight")

(internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted).  The ALJ's decision reflects that the ALJ weighed these opinions and reasonably found that the medical findings and observations in the record did not support them.  To the extent that Watson is arguing that the ALJ "cherry-picked" the record, the ALJ's discussion as a whole reveals that he considered the entire record.  Moreover, the ALJ limited Watson to a reduced range of sedentary work.  Although Watson may be able to point to selective records within the few medical records presented that arguably support Dr. Mitchell's opinions, he has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence based on the record presented.  It appears that the ALJ, as part of his duties in weighing the evidence, properly relied on medical evidence in making his residual functional capacity determination and resolving conflicts of evidence.  Where, as here, the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve these conflicts.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

For all of these reasons, the court finds that remand is not warranted for further consideration of Dr. Mitchell's opinions.

**B.     Testimony of the Vocational Expert**

As part of the ALJ's duty at Step Five of the sequential process, the ALJ must resolve any apparent conflicts between a vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").  See Pearson v. Colvin, 810 F.3d 204, 208-11 (4th Cir. 2015); SSR 00-04p, 2000 WL 1898704.  Watson argues that an apparent conflict exists between the testimony provided by the vocational expert and the occupational information in the Dictionary of Occupational Titles ("DOT"), and that the ALJ erred in failing to resolve this conflict.

In this case, the ALJ found at Step Five that there were jobs that existed in significant numbers in the national economy that Watson could perform.  Specifically, the ALJ observed that the vocational expert testified that an individual with Watson's age, education, work experience, and residual functional capacity would have been able to perform the requirements of the following occupations:

| Position Title | DOT Code | Exertional Level | SVP Level Skilled/Unskilled | Positions Nationally | Positions Regionally |
|---|---|---|---|---|---|
| Printed Circuit Board Assembler Inspector | 726.684-110 | Sedentary | SVP 2/Unskilled | 416,000 | 10,000 |
| Ampoule Sealer | 559.687-014 | Sedentary | SVP 2/Unskilled | 335,000 | 5,000 |
| Surveillance System Monitor | 379.367-010 | Sedentary | SVP 2/Unskilled | 81,000 | 1,000 |

(Tr. 21.)  The ALJ further found "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  (Id.)  The ALJ further found that

> [w]here the DOT may be silent on issues such as use of a cane, absences and time off task, the undersigned is satisfied that the vocational expert offered his opinion based on the provisions of Social Security Ruling 00-04p. The undersigned further finds the vocational expert's explanation for his testimony to be reasonable and reliable, based on his education, professional knowledge and research with respect to the demands of those occupations. The undersigned notes that his testimony does not contradict the Dictionary, but rather fills gaps in its information.

(Tr. 22.)

Watson argues that an apparent conflict exists because the first two occupations identified have a General Educational Development ("GED") reasoning level of 2 and the third occupation has a reasoning level of 3, both of which Watson argues exceeds his limitation "to simple, routine, repetitive tasks."[2]   Assuming without deciding that Watson's limitations may conflict with a reasoning level of three, the court turns to whether there is an apparent conflict between Watson's limitations and a reasoning level of two. As an initial matter, the court finds Watson's reliance on Henderson v. Colvin, 643 F. App'x 273 (4th Cir. 2016), and other similar cases to be unavailing. In Henderson, the United States Court of Appeals for the Fourth Circuit found a conflict between "an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." Id. at 277. However, Watson was not limited to one-to-two step instructions, and thus, the court finds that remand is not warranted on this basis. See Gardozzi v. Colvin, Civil No. SAG-16-20, 2016 WL 6085883, at *5 (D. Md. Oct.

---

[2] The DOT explains that reasoning level one requires the worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App. C, 1991 WL 688702. Reasoning level two requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. Reasoning level three requires the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Id.



18, 2016).  Moreover, as acknowledged by Watson, a split appears to exist among the circuits as to

whether a conflict exists between a reasoning level of two and a limitation to unskilled work.  (See

Pl.'s Reply Br. at 15, ECF No. 14 at 15) (citing Mattison v. Astrue, No. 09-C-60, 2009 WL 2591628

(E.D. Wis. Aug. 21, 2009) ("Courts are divided on whether a limitation to 'simple, routine' work

. . . is consistent with the ability to follow 'detailed but uninvolved' instructions.") (collecting

cases)).  Several courts in this district as well as other district courts in the Fourth Circuit have

recently held that a reasoning level of two is generally consistent with limiting a claimant to simple,

repetitive, routine tasks.  See McCullough v. Colvin, C/A No. 4:14-cv-1362 DCN, 2015 WL

4757278, at *6 (D.S.C. Aug. 11, 2015) (collecting cases);[3] see also Gardozzi, 2016 WL 6085883,

at *5.  Based on the foregoing, the court finds that at this time Watson has failed to demonstrate that

there is an *apparent unresolved conflict* between the vocational expert's testimony as to a limitation

to simple, routine, repetitive tasks (*i.e.*, an unskilled position) and the DOT's indication that the

identified unskilled positions have a reasoning level of two.  Thus, Watson has failed to show that

additional explanation from the vocational expert would be required.

---

[3] In McCullough, the court acknowledged that "the Fourth Circuit Court of Appeals has not specifically addressed the correlation between DOT reasoning levels and an RFC limiting a claimant to simple, routine, repetitive tasks" and that "[t]here is some split of authority within the Fourth Circuit, at least as to GED Reasoning Level 2." McCullough, 2015 WL 4757278, at n.3.  The court further "acknowledge[d] that in the District of South Carolina, some courts have found 'that a conflict exists between a GED reasoning level of two or three and a limitation to simple, routine, and repetitive tasks' and that such a conflict must be addressed and resolved by the ALJ"; however, the court stated that most of those cases were distinguishable based on the additional limitations included in the respective RFCs—limitations that are not present in the instant case. Id.  Such additional limitations included, for example, an inability to perform more than one-to-two step instructions, and a limitation to short, simple instructions with minimal changes in routine.

## RECOMMENDATION

For the foregoing reasons, the court finds that Watson has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.


November 3, 2016                              Paige J. Gossett
Columbia, South Carolina                     UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

      The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

      Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

      **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).